## CLAIBORNE MYERS *v.* DAVID MYERS—JOHN L. HENLEY, Third Opponent.

If the possession of property in Louisiana has commenced by force or fraud, practised within the limits and jurisdiction of a sister State, and in opposition to the authority and judicial process of her Courts, such property must be returned to the State from which it was thus taken, and the parties remitted to that jurisdiction to settle their rights.

The release by the plaintiff in attachment in Mississippi, of any claim on the Sheriff resulting from his allowing the slaves attached to remain with the person holding possession of them, in no way invalidates the seizure.

In Mississippi the Sheriff who seizes slaves may retain possession of them, as well through the agency of a keeper, or an overseer, as by one of his deputies.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J. *Bonford & Finney* and *Chilton,* for plaintiff and appellant.     *Goold,* for opponent.

OGDEN, J.   The third opponent, who is the Sheriff of Harrison county, Mississippi, claims the custody and possession of twenty-three slaves who were seized and put in possession of the Sheriff of the parish of Rapides, by virtue of a writ of *fieri facias,* from the Fourth District Court of New Orleans, in the suit of *Claiborne Myers* v. *David Myers.*   He alleges that, on the 25th of December, 1851, the said slaves were lawfully in his possession, as Sheriff, in the State of Mississippi, by virtue of a writ of attachment from the Circuit Court of Harrison county, in a suit of *Samuel F. Butterworth* v. *David Myers;* that the said *David Myers,* on or about that time, forcibly and feloniously took said slaves out of his possession and carried them to the parish of Rapides, where, by collusion between himself and his brother, *Claiborne Myers,* the plaintiff in this suit, the said *David Myers* caused the slaves to be seized in satisfaction of the judgment obtained against him by his brother.   *Claiborne Myers,* in his answer, denies generally the allegations in the opposition, and specially that the opponent ever had custody of the slaves in his capacity of Sheriff.   He sets forth that he had obtained a judgment, in November 1847, against *David Myers,* which had been duly recorded in the parish of Orleans, the place of residence of *David Myers,* and had thereby acquired a judicial mortgage on these slaves, who were then in the State of Louisiana.   He further alleges that the existence of this judicial mortgage was well known to *Butterworth,* and that, in order to defeat it, he, *Butterworth,* had caused the slaves to be carried into the State of Mississippi, in order to subject them to his pretended claim. By a peremptory exception, subsequently filed, he relies on two additional grounds of defense; one, that if the opponent, or Sheriff, had ever levied on the negroes by process of attachment, he had abandoned and released the possession immediately after the· levy was made; the other, that the attachment, under which the Sheriff claimed the right, had been quashed and the suit dismissed, by a final judgment between *Butterworth* and *David Myers.*

The view we have taken of the law which ought to govern the case, renders it unnecessary to notice many of the points raised on the argument, and a great deal of testimony applicable only to those points.   We consider the only questions to be, 1st. Whether the slaves were lawfully in the custody of the opponent, as Sheriff, in the State of Mississippi—2d. Whether they were forcibly and feloriously taken out of his possession, and brought to this State.

47

*Claiborne Myers* may be entitled to the judicial mortgage on the negroes, which he asserts; and *Butterworth* may have resorted to improper means to defeat the mortgage by causing the negroes to be conveyed into the State of Mississippi. On the other hand, the judgment of *Claiborne Myers* against his brother *David Myers*, may be collusive and simulated, and designed to protect the property from the pursuit of *Butterworth*; all of which the parties reciprocally charge to be true. We express no opinion on those questions, considering them foreign to the issue. Nor do we even think it necessary to decide the question, so much argued at bar, as to the effect of the judgment in Mississippi, dissolving the attachment and dismissing *Butterworth's* suit. It may result, by virtue of that judgment, that the negroes will be restored to the defendant in Mississippi, or it may be that, by effect of a writ of error, with a supersedeas, either already or hereafter to be obtained, the possession of the negroes will be continued in the Sheriff. These questions we do not feel ourselves called on to decide.

If the possession of the parties in Louisiana has commenced by force or fraud, practised within the limits and jurisdiction of a sister State, and in opposition to the authority and judicial process of her Courts, we hold the rule stern and inflexible, that such possession must terminate as soon as an appeal is made to our laws; that the property must be returned to the State from which it was thus taken, and the parties remitted to that jurisdiction, to settle their rights. This doctrine has been repeatedly recognized in our State. See cases, *Powell* v. *McKee*, 4th Ann. 108; *Wingate* v. *Wheat*, 6th Ann. 241, and *Paradise* v. *Farmers' and Merchants' Bank*, 5th Ann, 711. The fact that the property was clandestinely taken by *David Myers* out of the possession of *Baylor*, who was appointed keeper by the Sheriff, is fully established, and it is shown that force would have been resorted to, if it had become necessary, to accomplish the object. The case is, therefore, reduced to the single question whether the negroes were lawfully in the custody of the opponent as Sheriff, at the time they were thus removed. It is contended, 1st. That the Sheriff was never in possession of the negroes under the writ of attachment, because, before the seizure, he was authorized by the plaintiff in the writ to leave the negroes in the possession of *Kendall*, to whom they were then hired. 2d. That according to the statute of Mississippi, it was necessary the Sheriff should have held possession of the negroes, either by himself or by a deputy, to be appointed in writing and with certain formalities prescribed in the statute. It appears that *Baylor*, the keeper appointed by the Sheriff, was in the employment of *W. G. Kendall*, to whom *David Myers* had hired the negroes. The written agreement or consent of *Butterworth*, the plaintiff in the attachment, to release the Sheriff from any liability resulting from his leaving the negroes, when attached, in the possession of *Kendall*, did not affect the seizure by the Sheriff, which appears, as well by his return as by the evidence, to have been made with all the formalities prescribed by law. The Sheriff's responsibility to *Butterworth* has only thereby diminished. The statute of Mississippi relating to the appointment of deputies, has no application. The Sheriff could as well have retained possession by a keeper or overseer, for whose acts he was responsible, as by his deputies. It was made his duty, by law, to provide for the sustenance and support of the negroes until they were sold or legally discharged from the attachment; and this he was to do on his own responsibility, as to the means to be employed. In the performance of that duty, for his own safety,

he might deem it necessary to incarcerate the negroes; but it would be a barbarous provision of law to require him to do so, in order to render the seizure a legal one. The legal seizure and custody of the negroes, under the attachment in Mississippi, was in every respect complete, and the plaintiff, *Claiborne Myers*, whatever his rights may be, cannot avail himself of the clandestine removal of the negroes to this State by his brother, *David Myers*, to defeat the attachment in Mississippi.

It is, therefore, ordered, that the judgment of the Court below be affirmed, with costs.