HARLAN KEYES *v.* SAMUEL RINES, S. R. WILLEY *Trustee*, AND LOUISA RINES, *Claimant.*

*Homestead. Husband and Wife. Trustee Process.*

Where the sum of $500. has been actually invested in land as a homestead, and changed into money, or a right of action by process of law, *in invitum*, and then kept as a separate homestead fund, not commingled with other moneys, and no intent shown to apply it to other uses, it is held to be exempt from attachment. And this is held to apply to a debtor coming to this state and bringing the fund with him from another state whose laws protect it to the same extent as our own.

The defendant's wife signed a deed of their homestead, sold under process of law in New Hampshire, upon condition of the payment of the proceeds to her, to be kept by her as a separate fund for a future investment in a homestead, free from

all interference of her husband. *Held,* that she thereby acquired title to the money and held it free from attachment on her husband's debts.

Subsequently her son-in-law purchased a farm for $1700., and it was agreed that one-half of it should be deeded to her, and for half the purchase money she was to pay in the $400. received for the homestead, and her two sons were to make up the balance, but living South, were prevented from completing the payment by the breaking out of the rebellion; but she paid the $400. to her son-in-law, and with her family moved on to the place, and he, as a temporary arrangement and waiting the completion of the bargain, gave her his note 'for the amount. *Held,* that this money may be regarded as already by agreement invested in the land, and the note was rather in the nature of a receipt than a promise to pay, therefore not liable to attachment on the defendant's debts. ALDIS, J., dissenting.

TRUSTEE PROCESS. The facts found by the commissioner are fully set forth in the opinion of the court.

Upon the commissioner's report, the court, December Term, 1863, POLAND, Ch. J., presiding, decided that the trustee was not chargeable, and rendered judgment that he be discharged with costs,—to which the plaintiff excepted.

*G. C. & G. W. Cahoon,* for the plaintiff, cited Law. Reg. Oct. 1862, p. 706, note; *Atkinson* v. *Atkinson,* 37 N. H. 434; *Howe* v. *Tufts,* 39 N. H. 478; *Davis and wife* v. *Andrews,* 30 Vt. 678; *Gunnison* v. *Twitchel,* 38 N. H. 62; *Bennet* v. *Cutler et al.,* 44 N. H. 69; *Howe* v. *Adams,* 28 Vt. 544; *Jewett* v. *Brock et al.,* 32 Vt. 65; Law Reg. Oct. 1862, p. 710; *Stebbins v. Peeler and Trustee,* 29 Vt. 290; *Scott* v. *Brigham and Trustee,* 27 Vt. 56; *Edson* v. *Trask and Trustee,* 22 Vt. 18; *Gay and wife* v. *Estate of Rogers,* 18 Vt. 342; *Hill and wife* v. *Royce,* 17 Vt. 192; *Rawlins and wife* v. *Rounds,* 27 Vt. 18.

*Cree & Davis,* for trustee and claimant, cited *White* v. *Hildreth,* 32 Vt. 265; *Webster* v. *Hildreths,* 33 Vt. 457; *Richardson* v. *Merrill's Estate,* 32 Vt. 27, and cases therein cited; *Hoyt* v. *Swift et al.,* 13 Vt. 129; *Kettle* v. *Harvey and Trustee,* 21 Vt. 301.

ALDIS, J. The plaintiff seeks to hold by trustee process the sum of $400., as the property of Samuel Rines, the principal defendant. The trustee has given his note for the $400. to Louisa Rines, the wife of Samuel Rines. The note being payable to Mrs. Rines, is *prima facie* her property, and of course not liable for her husband's debts.

To rebut this presumption, and to show that it is really the money of Mr. Rines, the plaintiff shows these facts. Mr. and Mrs. Rines

owned a homestead in New Hampshire. Mr. Rines being in debt, and the house and lot he owned being worth more than the $500. exempt as homestead, and being incapable of division, his creditors, pursuant to a statute of New Hampshire, sold the property at auction. By the New Hampshire law, the proceeds of the sale of the homestead part could not be paid to the husband without the consent of the wife, but (such consent wanting) should be deposited in a savings bank, where for one year it could remain free from attachment, and from which it could only be drawn upon the joint order of the husband and wife. If paid to the husband with the consent of the wife, or if paid to the wife by consent of the husband, the law is silent as to whether it would be exempt from his debts; but the spirit of the law would seem clearly to imply, that the proceeds of the fund while kept by both husband and wife as a homestead fund—separate from other moneys and not applied to other uses—would be free from attachment upon the husband's debts.

We think the fair meaning of the N. H. statute is, that the homestead when changed, by process of law *in invitum* as to its owners, into money, remains in its new form exempt from attachment so long as its owners keep it as such a separate fund, and do no act indicating its diversion and abandonment from such special use to other purposes. In the case at bar the wife refused to join her husband in a deed to the purchaser, unless the proceeds should be paid to her. But upon the assurance that she could hold the money as safely as she could the homestead, and upon payment of the proceeds to her, she consented to join in the deed. The $400. was paid to her, by the consent of the husband, and upon the condition and terms above indicated; and she has ever since kept the money in her own hands, free from all interference of her husband;—a separate fund, with the intent to invest it in a homestead. When her son-in-law, the trustee, purchased a farm for $1700., it was agreed that one-half of it should be deeded to Mrs. Rines, and for half of the purchase money ($850.) Mrs. Rives was to pay in the $400. she so held, and her two sons should make up the balance to the trustee. These two sons were in the state of Georgia, and by the breaking out of the rebellion have been prevented (as is said in the disclosure) from re-

mitting the $450. to their mother. But she paid the $400. to the trustee ; and he, as a temporary arrangement and waiting the completion of the bargain, gave her his note for the amount. And upon this arrangement she, and her husband and family, and her son-in-law, the trustee, moved on to the farm so bought, and have ever since resided there.

I. Let us consider the money merely as proceeds of the homestead, changed by process of law from land into money, kept by the wife as a homestead fund by the consent of the husband—kept separate by her, and with the abiding intent to appropriate it solely for a homestead.

A clear distinction has been made in the decisions in this state between the proceeds of personal property exempt from attachment when such property has been voluntarily sold by the debtor, and when taken from him by proceedings against his will and changed into money.

In the first case, the money or proceeds are held not to be exempt from his debts. The rule in such case is as expressed by Judge ROYCE in *Edson* v. *Trask and Trustee*, 22 Vt. 18, " The statutory exemptions of property in favor of debtors are uniformly limited to. specific chattels, and do not extend to debts or pecuniary claims due the debtor." That was the case of a cook-stove exempt while in in the debtor's hands, but the proceeds of it, or the debt for it, not exempt.

So " the tools of one's trade," and a last cow, when sold, have been held in their new form of debts due the debtor, as not exempt. *Scott* v. *Brigham*, 27 Vt. 561.

But where the property has not been voluntarily sold by the debtor, but changed in its form by process of law and against his will, then the proceeds are still held to be protected by the statute. Otherwise the debtor would be deprived of all benefit of the statutory exemption. This doctrine is fully established in *Stebbins* v. *Peeler and Trustee*, 29 Vt. 289. Ch. J. REDFIELD says, " Where this property is converted into a mere right of action, by a proceeding wholly *in invitum*, such right of action and the money collected are also exempt from attachment, the same as the property itself." This principle is in harmony with the recent legislation of our state upon the home-

stead law—our statute expressly providing for the protection of the proceeds of a homestead sold by process of law and for their investment under the order of court.

The proceeds of the homestead here in question were protected for the benefit of the wife and children while they remained in New Hampshire. They were kept by the wife, as a homestead fund—the identity of the fund preserved as well as the intent to apply it to the specific use. By removal to Vermont they came to a state where the same protection was extended to property so situated. Is there any reason why such a fund of the poor debtor should not be so sequestered and secured to its humane object because the debtor comes from a sister state to reside among us, and brings the fund with him from a state whose laws protect it to the same extent as our own? We think not. Of course neither a resident nor one who comes from abroad can of their own will set apart $500. and say, " this is a homestead fund, and therefore exempt." But where that sum has been actually invested in land as a homestead, and changed into money or a right of action by process of law *in invitum*, and then kept separate—not commingled with other moneys, and no intent shown to apply it to other uses, we think the reason and spirit of the law require it to be held sacred to its original use and to be exempt from attachment.

II. In this case too we think the transaction, as disclosed in the commissioner's report, might well be held as establishing a title in the wife to the money.

She had an interest in it by law, and refused to join in the deed with the husband unless the avails were to be hers. Her intent was that it should be hers and not her husband's—so that neither he nor his creditors could apply it to his debts. He consented. Her execution of the deed was a good consideration at least in part. It was a relinquishment of her interest in the land. If in part also it is to be deemed as a voluntary gift by the husband, this too may be justly upheld. He gives only what he has a right to give, viz : property exempt from his debts. His creditors can not call that a fraud which can do them no injury. Their rights are not impaired by his giving away property not liable to attachment. No intent to defraud is pretended to have existed. The wife therefore had by gift all her

husband's interest in the fund, and there was nothing left in him for his creditors to attach.

It is to be observed in this connection that the money has always been in her hands—claimed by her as her own and not interfered with by her husband.

III.   A third ground for discharging the trustee was suggested in argument, and is deemed tenable by a majority of the court.   It is that the contract between Mrs. Rines and her son-in-law may be fairly construed so that the money may be regarded as already by agreement invested in the land;—the bargain so far consummated that she has an equitable right to demand a conveyance of the land upon payment of the $450. still due, and the bargain remaining open for that to be done.   The trustee says the note he gave her was only for a temporary purpose, and to await the completion of the contract. In this view the note as between the parties would rather be in the nature of a receipt acknowledging the amount paid, than a promise to pay.   I am not able to say that this view of the case is satisfactory to my mind.

Judgment affirmed.