MASON *v.* BEEBEE *et al.*

*(Circuit Court, S. D. Iowa, C. D.* December 17, 1890.)

1. GARNISHMENT—PROCEDURE—JUDGMENT ON ANSWER.

Plaintiff, having obtained a judgment against defendant, garnished a corporation for which defendant was working, whose answer was as follows: The persons forming the corporation, among whom was defendant's wife, agreed to devote their time and services to it without compensation; but it was agreed that defendant's wife should contribute the services of her husband instead of her own, and that, if necessary, $25 a week was to be paid to her for her living expenses. This sum was paid her for a given time, but there was never any agreement whereby the corporation was to pay defendant anything, or whereby it employed him at all, except as a substitute for his wife, under said agreement. *Held,* that plaintiff was not entitled to judgment on the answer, as it does not on its face show any liability of the garnishee to defendant.

2. SAME—CONFLICT OF LAWS—EXEMPTIONS.

Where defendant is a resident of Illinois, and wages due him were earned there, the *situs* of the debt is Illinois, though plaintiff may have garnished the debtor while he was in Iowa, and by virtue of the principles of comity the Iowa court will apply the Illinois exemption laws to such wages. Limiting *Mooney* v. *Railroad Co.,* 60 Iowa, 346, 14 N. W. Rep. 343.

At Law. Motion by plaintiff for judgment on answer of garnishee.

*W. S. Clark,* for plaintiff.

*J. H. Jones,* for garnishee.

SHIRAS, J. The plaintiff herein obtained judgment in this court against J. T. Beebee and I. N. Rice for the sum of $449.85, on which execution was issued, and service thereof was had by garnishing the Rice-Hinze Piano Company, a corporation created under the laws of Iowa. J. C. Macy, the president and treasurer of the company, answered the garnishment on behalf of the company, and the plaintiff now moves for judgment on such answer, claiming that it appears therefrom that the garnishee, since the service of the writ of garnishment, has paid for the benefit of I. N. Rice, one of the execution debtors, the sum of $500, which amount should have been held for the benefit of the execution plaintiff.

In the answer on behalf of the garnishee the following facts are stated: The Rice-Hinze Piano Company was organized at Des Moines, Iowa, in March, 1889, and continued the manufacturing of pianos at that place until about the 1st of June, 1890, when the factory was removed to Chicago. The capital stock of the corporation was fixed at the sum of $25,-000, of which J. C. Macy owned $22,000, and Mrs. L. E. Rice, wife of I. N. Rice, owned $1,000, and Mrs. Hinze $2,000; that it was agreed that the members of the company should devote their time and services to the work of the company without compensation; that when Mrs. Rice subscribed for her shares of stock, it was agreed that she should contribute the time and services of her husband in place of her own, and that if it became necessary the company should pay her, for her living expenses, the sum of $25 per week; that so long as the business was carried on at De Moines no payments were made her, but after the removal to Chicago weekly payments of $25 were made to her. Touching any arrangement between

the company and I. N. Rice persoually, the answer of Mr. Macy is as follows:

"Neither the Rice-Hinze Company, nor myself, as its representative, nor myself individually, nor no other person representing either the company or myself, has ever made any arrangements, direct or otherwise with I. N. Rice, or any one representing him, for his services, except as hereinbefore stated; that is, that Mrs. Rice should contribute the services of her husband to the company in place of her own services. The money that is paid to Mrs. Rice is charged to her account on the books of the company, and I. N. Rice has absolutely nothing to do with the matter. He is not employed by the company, is not working for the company, and is not paid by the company. He is simply sent there by Mrs. Rice to represent her interests, and to fill her position, and to do the work which, under the agreement made when said company was organized, was to be done by her, and which would be done by her if she were able and capable of doing it."

On part of plaintiff it is argued that it is fairly inferable from the whole of the answer made on behalf of the garnishee that the arrangement made between Mrs. Rice and the company is merely a means of hiring I. N. Rice, and for his services paying the agreed sum of $25 per week. It is not to be denied that there is much force in the argument, and it may be true, as claimed, that the real purpose of the arrangement was to secure the services of I. N. Rice for the company at the price named, payment therefor to be made to his wife as a means of avoiding the claims of creditors, but I do not think the court is justified in so finding upon this motion.

To entitle an execution plaintiff to a judgment against a garnishee upon his answer alone, it must clearly appear that the liability exists. It is said by the supreme court of Iowa, in *Morse* v. *Marshall*, 22 Iowa, 290, that "in order to charge a garnishee on his answer alone there must be in it a clear admission of a debt due to, or the possession of money or attachable property of, the defendant. * * * If it be left in reasonable doubt, whether he is chargeable or not, he is entitled to a judgment in his favor." The same rule is reiterated in *Church* v. *Simpson*, 25 Iowa, 408; and *Hibbard* v. *Everett*, 65 Iowa, 372, 21 N. W. Rep. 683. In the answer of the garnishee in this case there is not only not a clear admission of a debt due, but an absolute denial of any liability whatever. True, these general statements are accompanied with details intended to show the actual arrangement between the parties, and if these details, fairly construed, showed a liability on part of the garnishee, it would be so adjudged, notwithstanding the general denial of liability. The difficulty is that if we accept as true the statement of the arrangement as made by the garnishee, it does not necessarily show that the company has been indebted to I. N. Rice in the past, or will become so in the future. Suppose the answer had stated that Rice worked for the company, giving his entire time and services thereto, but that the agreement was that he should do so without receiving any pay or compensation therefor, would the court be justified in rendering a judgment against the company for what it might deem was the reasonable value of such services, upon the argument that no reasonable man would make such an

arrangement, and that it must be a mere cover and sham? Clearly not, it seems to me. If issue is taken upon the answer of the garnishee, and evidence showing the fact of insolvency, and any and all other circumstances showing the real situation of the parties is introduced, then, upon such issue, the court will adjudge the matter according to the fair preponderance of the entire evidence, but upon a motion for judgment upon the answer alone the facts stated in the answer must be accepted as true, and the conclusion they require must be the one placed upon the answer. The result of a judgment in favor of plaintiff would be to compel the garnishee to pay to the plaintiff the sum of $500, while it is not made to appear from the answer that if Rice had sued, in his own behalf, the piano company, he would be entitled to any judgment against the company. If this was an action by Rice against the company, and the only evidence offered was the testimony of Macy, president of the defendant, containing just the facts and statements set forth in the answer of the garnishee, it is clear that he could not recover thereon against the company, and that for the reason that it did not appear that the company was bound to him for the work he had done, but, on the contrary, that the company was not bound to pay him for his services. Under these circumstances, I do not think the liability of the garnishee is made to appear so clearly as to justify a judgment against it.

If, however, it should be held, according to the contention of plaintiff, that I. N. Rice is in fact engaged as a foreman or superintendent in the factory at Chicago, and that the company, for such services, has engaged to pay the price or wages of $25 per week, the mode of payment testified to being merely a sham, then the question arises whether such salary or wages is not exempt from execution. Rice is a married man, and head of a family, and under the statutes of Illinois, as well as under the statutes of Iowa, his wages are exempt from execution, unless allowed to accumulate beyond $50 in amount in Illinois or beyond 90 days in Iowa. On behalf of plaintiff it is contended that as Rice is now a non-resident of the state of Iowa, his wages are not exempt from execution. In a general sense it is held that matters of exemption pertain to the remedy, and are governed by the law of the state wherein suit is brought, but the reason for such holding is that the property sought to be reached is situated where the remedy is sought, and in truth it is the *situs* of the property that determines what statute shall govern in the matter of exemption. *Spindle* v. *Shreve*, 111 U. S. 542–546, 4 Sup. Ct. Rep. 522. As to all property situated in Iowa, it is the law of Iowa which determines what portion of it, if any, may be held exempt from execution. Therefore it is held that the provisions of the statute of Illinois, for illustration, cannot be invoked to protect property in Iowa from seizure upon execution, even though the cause of action may have arisen in Illinois, and between citizens of that state. *Newell* v. *Hayden*, 8 Iowa, 140.

The question, then, arises whether the property or debt sought to be reached by the process of garnishment in this case is situated in Iowa or in Illinois. From the answer of the garnishee it appears that the fac-

tory of the piano company is situated in Illinois; the work done by I. N. Rice was so done and performed in Illinois; the weekly payments were made to him in Illinois, and he is a resident of that state. As the weekly wages were earned and came due, the debt thus created was the property of I. N. Rice, and, as a chose in action, "follows the person of the owner and has its *situs* at his domicile." *Tappan* v. *Bank,* 19 Wall. 490. It is equally true that personal property may be held to have a *situs* other than that of the owner's domicile. Based upon this fact the supreme court of Iowa, in *Mooney* v. *Railroad Co.,* 60 Iowa, 346, 14 N. W. Rep. 343, held that, under the attachment laws of Iowa, a debt due from the railway company to a resident of Nebraska, for wages earned in Nebraska, was a debt due in the state of Iowa, in such sense that a garnishment in attachment would give jurisdiction to the court, and further, that, the debt having a locality in Iowa, the question of exemption was to be determined by the law of Iowa, and, as the provisions of that law did not apply to non-residents, the attachment creditor could hold the debt, although by the statute of Nebraska it would have been exempt. It seems to me that the attention of the court could not have been fully given to the latter proposition; but it is assumed to necessarily follow from the ruling that the presence of the debtor in Iowa gave the debt a location in Iowa sufficient to sustain jurisdiction by attachment in the Iowa court. The *situs* of property for the purpose of jurisdiction is one thing, and its *situs* for the purpose of determining the rights of parties thereto is another, and the two are not necessarily the same.

I do not think the reasoning of the court in the *Mooney Case,* upon the point that a debt due from a person living in Iowa may be reached by garnishment upon attachment, under the provisions of the Iowa statute, and thereby jurisdiction may be acquired over the debt considered as property, can be successfully questioned; but even if there might be another side to the argument, yet that decision settles the law to be that a debt due from a person in Iowa to a non-resident may be deemed to be property in Iowa, within the meaning of the attachment laws of the state, so that by garnishing the debtor in Iowa jurisdiction can be secured in the attachment proceedings. The jurisdiction thus secured enables the court from which the writ issued to hear and determine all claims made touching the property, and to subject it to further process of the court. Does it follow that because the debt has a *situs* in Iowa, by reason of the presence of the debtor in Iowa, sufficient to sustain the jurisdiction of the court in attachment, that it may not be shown to have another *situs* with regard to other questions and rights?

To property thus seized by attachment a dozen claims may be asserted, and the court can hear and determine the issues thus presented. A lien for taxes may be asserted against the property, and the court will determine the *situs* of the property for purposes of taxation in determining the question of the priority of the lien for taxes. The garnishee may present various questions touching the extent of his liability, and these the court will determine with regard to the law of the place of con-

tract or performance as the case may require. It cannot be true that simply because the court originally obtained jurisdiction by garnishment upon attachment, the court is precluded from ascertaining the proper *situs* of the property with regard to other rights and questions that may be asserted to the property. The jurisdiction of the court having attached, then all other questions are to be decided upon their own merits, and just the same as though the jurisdiction had attached by means other than by attachment.

In the case at bar the jurisdiction was obtained by personal service upon I. N. Rice in Iowa, and the garnishment was had upon execution, and not upon attachment. Certainly it cannot be true that the question whether the debt due Rice for wages earned in Illinois is or is not exempt from seizure in Iowa is to be determined or influenced by the fact that the garnishment was upon attachment rather than upon execution. The real question is whether Rice can claim the benefit of the Illinois exemption, and this depends upon the ruling as to the *situs* of the property with reference to the exemption laws, and not upon any difference between the process of attachment or of execution under the statutes of Iowa. The jurisdiction of the court in a given case having attached, whether based upon personal service or upon service of a writ of attachment by garnishment, then the court can determine whether the attached property should be sold upon execution or be released because exempt from seizure for debt, and this question should be determined the same in a case wherein jurisdiction rests upon a garnishment as in a case wherein personal service was had upon the defendant within the territorial jurisdiction of the court. The query is, what is to be deemed to be the *situs*, with regard to the exemption law of Illinois, of a debt due for wages earned in Illinois by a resident of that state? Why not, to such a case, apply the general rule that a chose in action has its *situs* at the domicile of the owner thereof? True, it may be said that this is a fiction of the law which will, in many instances, be disregarded. Is it, however, any more of a fiction than to hold that the *situs* of the debt is wherever the debtor may be found? Fiction or not, it is the primary or general rule, and will govern unless good reason exists for adopting some other guide. What principle is there, or statutory provision, which requires the holding that the exemption afforded by the Illinois statute to wages due should be lost to a resident of that state simply because the debtor happened to come, for a single day, into Iowa, and was here garnished upon execution? If a resident of Illinois buys realty in Iowa, or sends personal property, like cattle or horses, into Iowa to here remain, he, by his own act, subjects the property to the laws of Iowa, and is conclusively bound thereby. If A., a resident of Illinois, engages in the service of B., likewise a resident of Illinois, his wages, if he is a head of a family, are exempt to the amount of $50. B. comes to Iowa for a temporary purpose, and is garnished on an execution against A. issuing from a court in Iowa. Did B., by coming to Iowa, without the knowledge, perhaps, of A., change the *situs* of A.'s property, to-wit, the sum due him for wages, so that the benefit of the exemption secured to

him by the Illinois law is thus lost to him? Is the *situs* of A.'s property, to-wit, the debt due him for wages earned in Illinois, changed back and forth every time B. chooses to cross the Iowa state line? Why not hold that the *situs* of the property, in view of the exemption laws, remains unchanged at the domicile of the owner of the chose in action?

But it may be said that it is only on the principle of comity that Iowa will recognize and give force to the laws of another state. This may be true, but if the basis of recognition be comity only, it is, nevertheless, the fact that recognition should be given to the laws of a sister state, when justice and fair dealing require it, unless the right claimed is contrary to public policy or some statutory or other established rule of law in Iowa. The statutes of Iowa, in this regard, are in entire accord with those of Illinois. It is the settled policy of Iowa to exempt the wages earned by the head of a family. No ground, therefore, exists for refusing to recognize the law of Illinois on the theory that such recognition would contravene the rule prevailing in Iowa on that subject. The supreme court of Iowa, in *Teager* v. *Landsley,* 69 Iowa, 725, 27 N. W. Rep. 739, held that the courts of Iowa would, by injunction, restrain a citizen of Iowa from prosecuting a suit by attachment in Minnesota against another citizen of Iowa, and by garnishment reaching a debt due for wages earned in Iowa. It was held that the jurisdiction to issue the injunction is founded on the clear authority vested in courts of equity over persons within the limits of their jurisdiction, "to restrain them from doing acts which will work injury and wrong to others, and are contrary to equity and good conscience," it being further said that "the settled policy of this state is to exempt certain property from the payment of debts. Contracts are made and credit extended with full knowledge of the law in this respect, and the state, we think, has the power to compel its citizens to respect the laws beyond its territorial limits." If it is the settled policy of this state that wages earned in this state, and exempt from execution under the laws thereof, will be protected from seizure in Illinois whenever the courts of Iowa can afford such protection, by enjoining the creditor from prosecuting his suit in Illinois, and this for the reason that it is contrary to equity and good conscience to permit the creditor, by suing in Illinois, to evade the settled policy of Iowa in exempting wages from seizure for debt, why should the courts of Iowa encourage citizens of Illinois to come into this state for the purpose of evading the settled policy of the laws of Illinois by subjecting, through the process of Iowa courts, wages earned in Illinois, and exempt by the laws of that state, to the payment of their claims? Is it consistent for the courts of Iowa to forbid, by injunction, its own citizens from suing in Illinois for the purpose of evading the exemption laws of Iowa, and at the same time entertaining suits by citizens of Illinois brought here for the purpose of evading the exemption laws of Illinois? If this becomes the settled doctrine in Iowa, and is accepted as the correct rule of law, it must be expected that the adjoining states will adopt the same principle in dealing with the citizens of Iowa, and what will be the necessary consequences? Thousands of men are in the employ of the for-

eign railway and other corporations in this state. Under the law of Iowa, wages are exempt to heads of families. If the rule announced in *Mooney* v. *Railroad Co.*, *supra*, is carried out, without modification, the protection intended to be secured to the families of the wage-earners, by the exemption law of the state, is practically destroyed. A creditor can go to Illinois or Wisconsin, bring suit by attachment, garnish the railway company, and defeat the Iowa exemption on the fiction that the debt due from the corporation has a *situs* in the state wherein suit is brought. It may be answered that the Iowa courts will enjoin the creditor from so doing under the rule followed in the *Teager Case*. The creditor may not reside in Iowa, or, if a resident, he may absent himself from the state, so that personal service cannot be had until the attachment suit is disposed of, or by the easy device of selling the claim to a non-resident the effect of an injunction may be avoided. At best, the cost of an injunction suit renders that form of protection valueless to the wage-earner. Practically, therefore, the doctrine laid down in the *Mooney Case* strips the families of workmen in Iowa of the protection the statute intended to give them. By holding, as that case seems to do, that the *situs* of a debt due for wages earned in Iowa, in regard to this matter of exemption, is to be deemed to be wherever the debtor may be found for purpose of garnishment, it follows that the creditor of the workmen may evade the Iowa statute by the simple device of bringing, or causing to be brought, an attachment suit in an adjoining state. The injustice and inequity of such a result, it seems to me, may be avoided by holding that when, by garnishment upon execution or attachment, it is sought to reach a debt due for wages, the court has the right to determine whether the debt is or is not exempt from seizure upon judicial process, and that in the determination of this question the *situs* of the debt will be deemed to be at the domicile of the wage-earner by whose labor the property, *i. e.*, the debt due him, was created. In the case of corporations carrying on business in several states wages earned will be governed by the law of the place where the workman has his domicile, according to the primary rule regarding the location of choses in action.

If a workman, living in Iowa, earns wages in Iowa for work done for a foreign corporation, the question of the exemption or non-exemption of such wages should be governed by the law of Iowa, no matter where the tribunal may be located that is required to hear and determine the question. Is there any reason, either in matter of form or of substance, that prevents courts from adjudging, in such cases, the rights of parties, according to the law of Iowa, or the law of Illinois, as the case may be? I can see no difficulty in so doing. For illustration: Suppose suit is brought in Iowa by attachment against a non-resident, and service is had by garnishing a supposed debtor living in Iowa. The garnishee answers that he is indebted to the defendant for goods sold him on credit in one amount and for wages for work done in Illinois by the defendant, a resident of Illinois, in another amount. A third party appears, and, being allowed to intervene, sets up that the debt due from the garnishee for goods sold had been assigned to him for value before service of the

writ of garnishment, and therefore the attaching creditor could not subject that debt to execution. The defendant in the attachment suit also appears, and sets up that the debt due from the garnishee for work done was for wages earned in Illinois for work done therein, he (the defendant) being the head of a family, and therefore the wages are exempt. Would not the court be charged with the duty of hearing and determining both the issues thus presented? In passing upon the claim of the intervenor, would not the court ascertain the facts of the transfer, and, finding that it had been made in Illinois, where both the defendant and the intervenor lived, would not the court apply the law of Illinois, in determining whether a legal and valid transfer of the debt had been made, and would it be debarred from viewing the fact of the transfer in the light of the Illinois law, simply because the suit in Iowa had been brought by attachment and garnishment? If, then, it appeared that a valid transfer of the claim had been made, according to the law of Illinois, before service of the writ of garnishment, would not the intervenor defeat the attachment? Coming, now, to the issue as to the wages earned in Illinois, the court would, in like manner, ascertain the facts; and, it being made to appear that by the law of Illinois wages earned by heads of families are exempt from execution; that the attachment defendant lived in Illinois, and by working for the garnishee in Illinois had earned certain wages due and payable in Illinois; and that he was the head of a family, and was such when the wages were earned,—then the question would arise as to the law that should be applied in determining the question of exemption. The law exempting wages from execution goes upon the principle that the family of the workman has an interest therein, and the protection of the statute is afforded only to wages earned by the heads of families as distinguished from persons not so situated. Practically the exemption statutes, both of Illinois and Iowa. assign to the families the wages earned by the head thereof; and in *Teager* v. *Landsley* the wife joined with the husband in suing out the injunction sustained in that case. Why should not the court, then, hold that when the wages were earned in Illinois by a resident head of a family, the statute of Illinois practically assigned the debt due for the wages thus earned to the family, and that the same force should be given to such statutory assignment as to a written assignment to a third party as against a writ of attachment in another state against the head of the family alone? But, aside from all refinements of this nature, upon the true principles of that enlightened comity that should exist between the sister states of this Union, it seems clear to me that the courts of Iowa should give full recognition to the policy of the Illinois statute, which is in harmony with that of Iowa, which is that the wages earned by the head of the family belong to the family, and cannot be seized for the debt of any member thereof, and that the beneficent purpose of the statute cannot be evaded by the device of crossing the state line and bringing suit in the courts of an adjoining state. The benefits of the exemption thus provided can be saved to all without trenching upon the jurisdiction conferred by the attachment laws of the state. The question

to be decided is not one of the jurisdiction of the court, but of the right of the family to wages earned, a right to be settled by the law of the place where the workman lives and performed the work which created the debt.

I have been drawn into this lengthy discussion of this question because of the conviction that the rule deduced from the *Mooney Case*, if carried out to its fullest extent, will work an unnecessary hardship to the very class of Iowa citizens which the Iowa statute was enacted to protect. For this reason I have argued the proposition at length, when it might have been sufficient, for the purpose of the present case, to have held that in a controversy in fact between non-residents of Iowa this court was free to determine the rights of the parties according to the law of the place where the wages were earned, it not being a question arising under any statute of Iowa. If, then, it be held that in fact the sums paid weekly to Mrs. Rice, by the garnishee, were so paid as wages earned by her husband, according to the contention of plaintiff, yet as it also appears that the wages were earned in Illinois, at the place of residence of Rice and his family, the conclusion would be that under the Illinois statute such wages are exempt from execution, and the garnishee is not liable to respond to the plaintiff herein for the amounts thus paid. For these reasons the garnishee is discharged.