**WM. CAMERON & CO., Inc., v. ABBOTT et ux. (No. 2234.)**

(Court of Civil Appeals of Texas. Amarillo. Jan. 9, 1924. Rehearing Denied Feb. 20, 1924.)

**1. Courts ☞516—Equity may enjoin prosecution of suit in another jurisdiction.**

A court of equity may enjoin a party from prosecuting another suit in a foreign jurisdiction.

**2. Exemptions ☞2—Exemption laws have no extraterritorial effect.**

Exemption laws have no extraterritorial effect.

**3. Homestead ☞76—Statute declaring homestead exemption held to apply only to property within state.**

Rev. St. art. 3785, providing general exemptions and including the homestead of the family, and articles 3786, 3787, defining the homestead and providing that the proceeds of a voluntary sale thereof shall be exempt, contemplate only homestead property within the state.

**4. Exemptions ☞2—Comity does not demand recognition of foreign exemption law.**

Comity does not demand recognition of a foreign exemption law.

**5. Injunction ☞33—Comity held not to require granting of injunction against proceeding in another state.**

In a suit to enjoin attachment and garnishment proceedings in another state against the proceeds of the sale of a homestead which because without the state were not within the exemption laws, comity for the exemption laws of the state wherein the garnishment proceedings were being prosecuted *held* not to require granting of the injunction, where the funds sought to be protected were no longer exempt in the state where located and where to enforce the exemption it would be necessary to enjoin proceedings in the very state whose laws were being invoked to establish the right of exemption.

**6. Injunction ☞33—Trickery in obtaining jurisdiction of property ground for injunction against garnishment in another state.**

That jurisdiction of property in garnishment proceedings in another state was obtained by trickery, if irreparable injury is shown, is grounds for an injunction against the prosecution of such suit.

**7. Injunction ☞118(1)—Allegations held not to warrant injunction against garnishment suit on ground of trickery held unwarranted.**

Allegations, in a suit to enjoin prosecution of attachment and garnishment proceedings in another state, that plaintiff's debtor, in such state, acting in collusion with the plaintiff·in the garnishment proceedings, had requested that notes be forwarded to a bank where they would be paid, so that they might be subject to garnishment, *held* insufficient to warrant an injunction on the ground that jurisdiction of the property had been obtained by trickery; the presumption being that the court in garnishment proceedings would release the property on a proper showing of trickery in obtaining jurisdiction of it.

**8. Appeal and error ☞1175(1)—Cause should be remanded where justice will be better subserved.**

Where equities manifestly exist and justice will probably be better subserved by so doing, the appellate court should remand a case rather than render judgment.

**9. Injunction ☞33—General appearance by defendant in garnishment in another state held not to preclude granting of injunction against suit.**

That defendant has entered a general appearance in garnishment proceedings in another state does not preclude him from maintaining suit to enjoin further prosecution of such action.

Appeal from District Court, Hardeman County; J. V. Leak, Judge.

Action by R. W. Abbott and wife against William Cameron & Co., Incorporated. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

D. E. Magee, of Quanah, and T. M. Robinson, of Altus, Okl., for appellant.

Stansell Whiteside, of Altus, Okl., and Marshall & Perkins, of Quanah, for appellees.

BOYCE, J. R. W. Abbott and his wife brought this suit in the district court of Hardeman county, against Wm. Cameron & Company, Incorporated, to enjoin the defendant from proceeding further with attachment and garnishment proceedings instituted by it against the plaintiff R. W. Abbott in the district court of Jackson county, Okl. A temporary injunction was granted, which, on final trial. without a jury, was perpetuated; and the defendant appeals.

It appears from the pleading and evidence: That in November, 1921, plaintiffs resided in Altus, Okl., owning an urban homestead at that place. At such time they sold said homestead property to one Gosselin, for $4,-000, receiving $250 in cash. and $3,750 in notes, intending to move to Texas and establish their home in said state and to use the proceeds of the sale of the Oklahoma homestead to purchase and improve a ·homestead in Texas. Immediately after such sale, they did move to Hidalgo county, Tex., where they entered into a contract for the purchase of a 10-acre tract of land and were preparing to improve it in pursuance to the plan already stated. Wm. Cameron & Co., Incorporated, is a corporation created under the laws of the state of Texas, but having a permit to ⋅do business in Oklahoma. Prior to the time of the removal to Texas, the plaintiff R. W. Abbott had incurred indebtedness to the said Wm. Cameron &˙ Co., in Oklahoma, amounting to the sum of $2,500.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

One of the notes executed by Gosselin, being for the sum of $500, fell due in February, 1922 (plaintiffs had pledged this note to secure material for improvement of the Hidalgo county property), and Gosselin had advised the plaintiff that he would be unable to pay it; but shortly thereafter, and before the maturity of the other notes, the said Gosselin requested the plaintiffs to send all of said notes to the City National Bank of Altus, Okl., and stated that he would "pay them off." The evidence will warrant the conclusion that Gosselin had no intention of paying said notes, but acted in collusion with the defendant for the purpose of inducing the plaintiffs to send the notes to the Oklahoma bank so that they might there be subject to garnishment at the suit of the defendant. Plaintiffs sent said notes to the bank at Altus as requested, and immediately thereafter Wm. Cameron & Co. sued the plaintiff R. W. Abbott for the sum of $2,500 and caused a writ of garnishment to be served on the bank. "The defendant R. W. Abbott filed a general appearance in the district court of Jackson county, Okl., but said general appearance was filed by the attorney of the said R. W. Abbott by virtue of an agreement between the attorney for the plaintiff and defendant in said Oklahoma action in order to avoid the costs and inconvenience of service by publication upon the defendant in said garnishment action pending in the courts of the state of Oklahoma." A receiver was appointed by the Oklahoma court, "by the consent of both parties," to collect said notes, and they have been paid in full to the receiver, who holds the funds pending the determination of this litigation. The parties agreed on the trial:

"That under the laws of the state of Oklahoma the proceeds of the sale of a homestead are exempt as to residents, but such exemption ceased under the laws of the state of Oklahoma upon the party becoming a nonresident of the state."

Plaintiff's petition for injunction alleges the foregoing facts in substance, and in addition that the proceeds of the sale of the homestead were exempt under the laws of the state of Texas; that the purpose of the defendant in securing the notes to be sent to Oklahoma, and the prosecution of said suit in that jurisdiction, was to evade the exemption laws of the state of Texas and subject said funds to the payment of their said indebtedness, and that such will be the result of said suit unless the defendant is restrained from proceeding therein. The judgment of injunction was that—

"Wm. Cameron & Co., Incorporated, be and it is hereby perpetually enjoined from further prosecuting said garnishment and attachment proceedings in so far as it may be sought by said proceeding, to subject said notes or said amount of money received by the receiver (appointed by said district court of Jackson county, Okl.) to the payment of said indebtedness alleged to be due the defendant, Wm. Cameron & Co., Incorporated," etc.

[1] There is no question as to the power of a court of equity to enjoin a party subject to its jurisdiction from prosecuting in a foreign jurisdiction a suit against the petitioner in the suit for injunction. The power, however, is cautiously exercised. The right of a party to maintain a suit in the forum of his own choice is conceded, and the jurisdiction is allowed only in cases where the maintenance of the suit in the foreign jurisdiction "is contrary to equity and good conscience." The question has been so frequently and exhaustively considered that it is only necessary for us at this time to refer to a few of the authorities which deal with this question. Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; Bigelow v. Old Dominion Copper & Mining Co., 74 N. J. Eq. 457, 71 Atl. 155; Jones v. Hughes, 156 Iowa, 684, 137 N. W. 1023, 42 L. R. A. (N. S.) 502; Reed v. Illinois Central Ry., 182 Ky. 455, 206 S. W. 794; High on Injunctions, §§ 102–107. Proceeding under this principle, the courts have frequently enjoined a resident in its own jurisdiction from maintaining proceedings in a foreign jurisdiction against another resident where the purpose of the suit is to evade the exemption laws of the jurisdiction of the residence of such parties. Moton v. Hull, 77 Tex. 80, 13 S. W. 849, 8 L. R. A. 722; Cole v. Cunningham, supra; R. C. L. vol. 11, p. 551; 25 C. J. pp. 153, 154. So, if the exemption law of the state of Texas applies to the proceeds of the sale of the Oklahoma homestead brought into this state, as stated, we would conclude that the injunction was rightly granted. The question to be determined, then, is whether the provisions of our statutes apply to this property, and we will proceed to a discussion of that question.

The state Constitution (article 16, §§ 50 and 51) provides for the exemption of the homestead of the family and defines what property constitutes the homestead. Prior to 1897 we had no law expressly exempting the proceeds of a voluntary sale of the homestead, and our courts were holding that they were not exempt. The Legislature in 1897 (General Laws of 1897, p. 131) amended the statute so as to exempt such proceeds. In this legislation the provision for exemption of the proceeds of the sale of homestead constitute a part of the same sentence which defines the homestead, the amendment merely adding to the definition of the homestead the following language:

"Provided, further, that the proceeds of the voluntary sale of the homestead, shall not be subject to garnishment or forced sale within six months after such sale."

In the revision of the statutes in 1911, this legislation appears as articles 3786 and 3787,

the provision for exemption of the proceeds of the sale of the homestead being separated from the definition and constituting article 3787, the words "provided further that," as above quoted, being omitted. Article 3785 of the 1911 statutes provides the general exemptions allowed, the first being "the homestead of the family." Article 3786 defines "the homestead," and article 3787 provides that "the proceeds of the voluntary sale of the homestead shall" be exempt as stated.

[2, 3] When the Legislature provided that the proceeds of the voluntary sale of "the homestead" should be exempt, we think it, by necessary implication, referred to "the homestead" as otherwise defined—at first in the same sentence of the enactment and later by the preceding section of the statute. This definition of "the homestead" we think also by necessary implication refers to a homestead in Texas. Exemption laws are local and "pertain to the remedy having no extraterritorial effect." The framers of the Constitution and the lawmakers in defining a homestead were evidently not attempting to say what should be the homestead in some other state. When they added the provisions for exemption of the proceeds of the sale they were, in our opinion, also evidently referring to "the homestead" provided by other parts of the law and not to a homestead in some other state. This conclusion is sustained, we think, by the following authorities: Rogers v. Raisor, 60 Iowa, 355, 14 N. W. 317; Dalton v. Webb, 83 Iowa, 478, 50 N. W. 58, 32 Am. St. Rep. 314; State Bank of Eagle Grove v. Dougherty, 167 Mo. 1, 66 S. W. 932, 90 Am. St. Rep. 422; Wickwire v. Zeller (Ky.) 68 S. W. 630. In the states in which these cases were decided the homestead exemption applied only to debts created after the acquisition of the homestead right; the proceeds of the sale of the homestead were protected, and when invested in the purchase of another homestead the right in the latter homestead would be preserved as of the date of the acquisition of the homestead that was sold. In the case of Rogers v. Raisor, supra, an Iowa homestead was sold. Its owner moved to Missouri and invested the proceeds in homestead property in that state. The Missouri homestead was then sold and the proceeds invested in another Iowa homestead, and it was held that the exemption as to debts existing at the time the proceeds of the first sale were carried into Missouri was lost. The court said:

"What, then, was the character impressed upon the proceeds of the Iowa homestead when taken to Missouri for reinvestment? The laws of Iowa ceased to operate upon it, and to affect its character, as soon as it was invested in real estate in the State of Missouri. It was not the proceeds of the sale of a homestead under the laws of Missouri, for those laws can apply only to a homestead held under the laws of that state."

This case was followed by a later case in the same state. Dalton v. Webb, supra. In the case of State Bank of Eagle Grove v. Dougherty, supra, a debtor, owning a homestead in Iowa which was exempt as to the debt in question, sold the homestead, moved to Missouri, and with the proceeds of the Iowa homestead acquired a homestead in Missouri. It was held that the Missouri property was not exempt as to such debt, and that, when the debtor moved into Missouri and with the proceeds of the sale of the Iowa homestead, the exemption was lost. "It was not the proceeds of the sale of a homestead held under the laws of Missouri, for these laws can apply only to a homestead held under the law of that state." The decision of the Kentucky court in the case of Wickwire v. Zeller, supra, is to the same effect. We do not desire at this time, as will appear from what we shall hereinafter say, to be committed to an unconditional approval of the decisions reached in these cases. They are correct, however, we think, in the holding that the homestead exemption laws of the state are to be construed as applying only to homestead property within such state.

In the case of Keyes v. Rines, 37 Vt. 260, 86 Am. Dec. 710, Rines and his wife had a homestead in the state of New Hampshire, which was sold at judicial sale, and $400 of the proceeds of the sale were exempt under the laws of that state. The Rineses moved to Vermont, contracting to purchase land in that state and onto which they actually moved. It was intended that the $400 should be paid as part of the purchase price for said Vermont property, but before the payment was made garnishment was served on a trustee holding such fund for the benefit of the Rineses or for Mrs. Rines alone. The court said:

"The proceeds of the homestead here in question were protected for the benefit of the wife and children while they remained in New Hampshire. They were kept by the wife, as a homestead fund—the identity of the fund preserved as well as the intent to apply it to the specific use. By removal to Vermont they came to a state where the same protection was extended to property so situated. Is there any reason why such a fund of the poor debtor should not be so sequestered and secured to its humane object because the debtor comes from a sister state to reside among us, and brings the fund with him from a state whose laws protect it to the same extent as our own? We think not. Of course, neither a resident nor one who comes from abroad can of his own will set apart $500, and say, 'this is a homestead fund, and therefore exempt.' But where that sum has been actually invested in land as a homestead, and changed into money or a right of action by process of law in invitum, and then kept separate, not commingled with other moneys, and no intent shown to apply it to other uses, we think the reason and spirit of the law require it to be held sacred to its original use and to be exempt from attachment."

The decision of the case was rested also on two other grounds, not necessary to state; but this does not, as the Missouri court in the decision above referred to seem to think, wholly destroy the authoritative effect of the language just quoted. We will refer to this case again.

The appellee relies on the case of Carroll v. State Bank (Tex. Civ. App.) 148 S. W. 818, to sustain the proposition that article 3787 of the statutes covers these proceeds of the sale of the Oklahoma homestead. The holding in that decision is accurately stated in the syllabus as follows:

"The statute defining what property is exempt from execution makes no discrimination between citizens and nonresidents, and a nonresident, who is the head of a family and who owns two mules, but no other mules or horses, and who brings the mules into the state temporarily, is entitled to claim them as exempt from seizure under attachment sued out in the state."

In that case the property claimed to be exempt came directly within the specific description of the law as applied to property within this state, and it was not necessary to say that the Legislature intended to give the law an extraterritorial intendment, as is necessary in order to bring the property in question here within the terms of articles 3786 and 3787, R. S.

For these reasons we do not think that our own statutory law applies to this fund. Should it be exempt under the rule of comity?

[4, 5] Comity does not demand the "recognition of a foreign exemption law." 25 C. J. p. 13. There is authority, however, for the proposition that a foreign exemption may, in a proper case, be allowed in another jurisdiction whose laws in respect to such matter are similar. John H. Schroeder W. & L. Co. v. Willis Coal Mfg. Co., 179 Mo. App. 93, 161 S. W. 352; Mason v. Beebee (C. C.) 44 Fed. 561; Missouri Pacific Ry. Co. v. Maltby, 34· Kan. 125, 8 Pac. 236. This principle evidently had a very considerable influence in the decision of the Vermont case, already referred to. Without having undertaken a thorough consideration of the matter, we may say that it seems to us to be a reasonable rule, and if the proceeds of the Oklahoma homestead were exempt under the laws of that state, we might be inclined to allow such exemption in this state. Such a holding might be contrary to the decisions of the Missouri, Kentucky, and Iowa cases first above referred to; nevertheless those cases would remain authority for the proposition which they were cited to sustain, to wit, that the exemption could not be held to be within the terms of the statutory law of this state. But whatever might be the correct rule as to the application by comity of the foreign exemption, it would not, in our opinion, avail the plaintiffs in this case for two reasons: First,

it is conceded that these proceeds are not now exempt under the Oklahoma law; second, even if they were, it would hardly seem proper to enforce the exemption which we would allow by comity only by injunction against proceedings in the very state whose laws were being invoked to establish the right of exemption.

We therefore conclude that the homestead exemption claim furnishes no ground for the injunction.

[6, 7] It was alleged that jurisdiction in Oklahoma of the property in question was obtained by trickery. This fact might, if irreparable injury were shown, afford grounds for injunction. Kempson v. Kempson, 58 N. J. Eq. 94, 43 Atl. 97; Id., 63 N. J. Eq. 783, 52 Atl. 360, 625, 58 L. R. A. 484, 92 Am. St. Rep. 682; Gwaltmey v. Gwaltmey, 116 Misc. Rep. 85, 190 N. Y. Supp. 199; Mason v. Harlow, 84 Kan. 277, 114 Pac. 218, 33 L. R. A. (N. S.) 234; Gaunt v. Nemours Trading Corporation, 194 App. Div. 668, 186 N. Y. Supp. 92; Standard Roller Bearing Co. v. Crucible Steel Co. (N. J. Ch.) 63 Atl. 546; and authorities first above cited. In the two cases first cited the courts of New Jersey and New York, respectively, enjoined the husband, the domicile of the husband and wife being in those jurisdictions, from maintaining a divorce suit in another suit whose jurisdiction was secured by fraudulent and false allegations of residence. The other authorities fully sustain, we think, the right and duty of the court to enjoin proceedings in a foreign jurisdiction where such jurisdiction was fraudulently obtained, if the other conditions precedent to the securing of an injunction in any case are present. One of these is, of course, the showing of irreparable injury. In this latter respect we think the petition and proof is insufficient to sustain an injunction on the theory now being considered. Wade v. Crump (Tex. Civ. App.) 173 S. W. 538. See, also, in this connection, Sandage v. Studabaker Bros., 142 Ind. 148, 41 N. E. 382, 34 L. R. A. 363, 51 Am. St. Rep. 165; O'Haire v. Burns, 45 Colo. 432, 101 Pac. 755, 25 L. R. A. (N. S.) 275, 132 Am. St. Rep. 191, last paragraph of opinion. It is to be presumed that the Oklahoma court would, on showing of the trickery practiced in securing the presence of the notes in Oklahoma for the purpose of garnishment, quash the proceedings and release the property. Timmons v. Garrison, 4 Humph. (Tenn.) 148; Deyo v. Jennison, 10 Allen (Mass.) 410; Townsend v. Smith, 47 Wis. 623, 3 N. W. 439, 32 Am. Rep. 793; Myers v. Myers, 8 La. Ann. 369, 58 Am. Dec. 689; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 787; notes, 93 Am. Dec. 466; 15 C. J. 800; 7 R. C. L., 1040. In Timmons v. Garrison, supra, the creditor decoyed a negro slave owned by his debtor and in his possession in the state of Georgia, into Tennessee for the purpose of securing jurisdiction by attach-

ment in the latter state. The Tennessee court, upon showing of these facts, promptly released the attachment. The other authorities cited, and still others to the same effect, sustain the proposition that a court will refuse to entertain jurisdiction where it is made to appear that such jurisdiction was procured .by fraud. In this case the plaintiff does not allege that the Oklahoma court would not, on showing of the facts under which this property was sent into Oklahoma, release the garnishment, nor does it appear that plaintiffs will be put to any additional expense or trouble or incur any risk of loss of their rights in this respect by being forced to present them in the Oklahoma court. There is a general allegation that unless the injunction is perpetuated in this case, the Oklahoma court will subject the property to the payment of defendant's debt; but that allegation is not supported by proof except in connection with the showing of the Oklahoma law in reference to exemptions. The allegations of fraud in procuring the plaintiffs to send the notes to Oklahoma were made in connection with the homestead exemption claim. The pleading is evidently not drawn for the purpose of procuring an injunction on the theory of fraud in obtaining jurisdiction, aside from the homestead exemption claim.

[8] For these reasons we conclude that under the pleading and the evidence plaintiffs were not entitled to the injunction and the judgment should have been for the defendant. But in view of the "equities that manifestly may exist" and the fact that "justice will probably be better subserved by so doing," we think we should remand the case rather than render judgment here for appellants. Pershing v. Henry (Tex. Com. App.) 255 S. W. 384, and authorities there cited; Wilkin v. Owens, 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867.

[9] One other contention urged by appellant should be noticed; that is, that the general appearance in the Oklahoma suit is fatal to the maintenance of this injunction suit. We have been referred to no authorities directly in point on this question. The following cases, while not' directly in point, are to some extent relevant: Townsend v. Smith, 47 Wis. 623, 3 N. W. 439, 32 Am. Rep. 793; Bigelow v. Old Dominion Copper Mining & Smelting Co., 74 N. J. Eq. 457, 71 Atl. 155; Freick v. Hinkly, 122 Minn. 24, 141 N. W. 1096, 46 L. R. A. (N. S.) 695. On principle we see no reason to sustain this contention. The facts do not present a case of estoppel or laches, as they did in the case of Bigelow v. Old Dominion Copper & Mining Co., supra. The wrong of the defendant secured the jurisdiction of the property in the Oklahoma court and imperiled the plaintiff's rights. The fact that they, or rather the. husband,

merely appeared in the Oklahoma court in order to save expense and preserve their rights in the event they were finally forced to litigate in that court, ought not to stand in the way of their appealing to a court of equity to prevent the consummation of the wrong.

Reversed and remanded.