Carson *v.* Railway Company.

CARSON *v.* RAILWAY COMPANY.

(*Jackson.*    April 17, 1890.)

1. EXEMPTIONS.    *Statutes creating have no extraterritorial force.*

Statutes exempting property from execution have no extraterritorial force.

Cases cited and approved: Hawkins *v.* Pearce, 11 Hum., 45; Lisenbee *v.* Holt, 1 Sneed, 50; Emmett *v.* Emmett, 14 Lea, 370; Prater *v.* Prater, 87 Tenn., 83; Holland *v.* Railroad, 16 Lea, 418.

2. SAME.    *Garnishee need not claim exemptions for his debtor.*

A resident of this State cannot, when sued in another State, obtain the benefit of exemptions secured to him by our statutes, and therefore his garnisheed debtor could not, in such case, obtain such exemptions for him, and need not endeavor to do so.

Cases cited and approved: 16 Am. & Eng. R. Cases, 460; 9 *Ib.*, 158.

Cited and disapproved: 36 Wis., 288.

Perhaps garnishee need not ordinarily claim the exemption for his creditor where the proceedings are wholly within this State.    But he may do so, and thus defeat the garnishment.    Davenport *v.* Swan, 9 Hum., 186.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County.    L. H. ESTES, J.

WATSON & HIRSCH for Carson.

POSTON & POSTON for Railway Company.

CALDWELL, J.    This is an action of debt, tried below and here on an "agreed state of facts."

The plaintiff, Sam Carson, was in the service of the defendant, the Memphis and Charleston Railroad Company, as brakeman on one of its trains running from Memphis to Chattanooga and back again, through Mississippi and Alabama.    He was a citizen of Tennessee, made his contract of employment here, and usually received his wages at Memphis, though no place of payment was named in the contract.

While so employed the plaintiff, in the month of May, 1888, earned $20.45, which, by the custom of the company, became due and payable on June 10 following.

On May 28, Prout, a citizen of Alabama, sued out an original attachment in that State against Carson, on the ground of non-residence, to collect a debt of $21 contracted there; and on the same day a writ of garnishment issued on the attachment against the Memphis and Charleston Railroad Company, to reach a sufficiency of Carson's wages to pay his debt to Prout.

Proper publication was made for Carson, and by that means or some other he had actual notice of the pendency of the attachment and garnishment proceedings, but he failed to make defense.

The garnishment process was served on the company's agent at Tuscumbia, and on June 11, one day after Carson's wages became due and payable, the company answered that it owed him "$20.45 for wages due him as brakeman."

Trial was duly had and judgment rendered against the garnishee for the $20.45. This judgment the company paid.

Thereafter, on June 28, 1888, Carson brought the present suit before a Justice of the Peace at Memphis to recover the same wages from the railroad company.

The fact of the proceedings in Alabama and the payment of the judgment there were interposed as a defense to the action. The Justice of the Peace, and after him the Judge of the Circuit Court, adjudged the defense a good one, and rendered judgment for the defendant.

Carson has appealed in error.

It is agreed that the attachment and garnishment proceedings were in strict conformity to the laws of Alabama. From this concession it follows that the garnishee was completely discharged from all liability by payment of the garnishment judgment, unless there be something in the question of exemption to take the case out of the usual rule and prevent that result.

It is earnestly argued by Carson's counsel that this is an exceptional case; made so by the fact that under the law of this State (Code (M. & V.), § 2931) his wages to the extent of $30 were ex-

empt from seizure, by garnishment or otherwise. The position, briefly stated, is that it was the duty of the garnishee to claim the exemption for Carson, and thereby prevent judgment against it on the garnishment process, and that having failed to do this, the company's indebtedness to him remains unchanged and unsatisfied.

To our minds this position seems altogether untenable, for more reasons than one:

*First.*—There was no peculiarity about this indebtedness to Carson—no inherent quality or superadded responsibility to distinguish it from any other debt—so far as the company was concerned. It owed this debt as it owed any other debt. It had assumed no other obligation than that of payment of a particular sum at a specified time.

The contention of Carson would make the obligation greatly more burdensome by throwing upon the company the additional responsibility and expense of knowing, at its peril, that there was an exemption law in his favor, and of claiming the benefit of it for him. Such a requirement would be unjust and unreasonable.

In *Davenport* v. *Swan*, 9 Hum., 186, the garnishee stated in his answer that a horse of the debtor in his possession was exempt from execution; whereupon he was discharged because his answer, which was conclusive, did not contain a sufficient admission to charge him. That case does not stand in the way of the views just expressed. There the garnishee volunteered to set

up the fact of exemption. He was not required to do it; nor was it decided or intimated that it was his duty to do so, or that in case of failure to do so he would have been liable to the garnishment debtor for the value of the horse. No such question was before the Court.

The question of the right or duty of a garnishee in this State to plead the exemption law of another State in favor of its creditor (the garnishment debtor), who resided in the other State, was expressly reserved by this Court in the case of *Holland* v. *Railroad Co.*, 16 Lea, 418, 419.

*Second.*—Had the railroad company made the claim of exemption ever so formally for Carson, it would have availed him nothing. Exemption laws have no extraterritorial effect. Their operation is restricted to the States in which they are enacted. Freeman on Ex., Sec. 209; Thompson on H. & E., Sec. 20.

Carson was a citizen of Tennessee, and in the Courts of this State would have been entitled to the exemption had he claimed it; but the suit was in Alabama, where even he could not have made the claim successfully. Then, of course, the garnishee could not have done so for him, and ought not to suffer for failing to make the effort.

Non-residents of this State cannot avail themselves of the benefit of our exemption laws, either as to personalty (*Hawkins* v. *Pearce*, 11 Hum., 45; *Lisenbee* v. *Holt*, 1 Sneed, 50), or as to homestead.

*Prater* v. *Prater,* 3 Pickle, 83; *Emmett* v. *Emmett,* 14 Lea, 370.

Learned counsel for Carson relies on certain authorities which are yet to be noticed.

Mr. Smyth, in his work on Homestead and Exemption, Sec. 562, says: " A garnishee who pays over money which constitutes a part of the personalty exemption of the debtor does so at his own risk. He will be liable to the debtor (his creditor) for the full amount he has paid. A person who has been brought into Court as a garnishee may answer that the property of the debtor in his hands, or his indebtedness to such debtor, is exempt by law from seizure on attachment or execution, and he is bound to bring the fact to the notice of the Court, otherwise the judgment against such garnishee, and the satisfaction thereof, will not bar an action against him by the attaching debtor."

For these propositions the author cites *Watkins* v. *Carson,* 46 Ga., 444, and *Pierce* v. *Chicago and North-western Railroad Company,* 36 Wis., 288. We have not had access to the former of these cases, but the latter we find to be an authority for the text, and very similar to the one at bar; the difference being that the creditor of the garnishee in that case had no notice of the suit plead in bar. That case has attracted wide attention and received very unfavorable comment from Courts of last resort and text-writers. It cites no precedent to support it, and, so far as we know, has not

itself been followed by any subsequent case. In Note 2 to Sec. 209 of his work on Executions, Mr. Freeman says it is "utterly indefensible." Mr. Thompson likewise assails it as unsound, and assigns his reasons at some length in Sec. 866 of his work on Homestead and Exemptions.

The cases of *B. & M. River R. R.* v. *Thompson,* 16 Am. & Eng. R. R. Cases, 460; *Mooney* v. *U. P. R'y Co.,* 9 Am. & Eng. R. R. Cases; and *Eichelburger* v. *P., C. & St. L. R. W. Co., Ib.,* 158, decided respectively by the Courts of last resort in Kansas, Iowa, and Ohio, are in conflict with the Wisconsin case (the last one expressly denying its soundness), and in harmony with our holding herein.

Let the judgment be affirmed.