CENTRAL TRUST CO. OF NEW YORK v. CHATTANOOGA, R. & C. R. CO. (MILLER & GARMONY, Interveners).

(Circuit Court, E. D. Tennessee, S. D. July 11, 1895.)

1. RECEIVERS—EXEMPTION FROM GARNISHMENT.
   Though a receiver appointed by a court of equity is by statute exempt from garnishment in his own state the federal courts of another state will not refuse to entertain garnishment against him on a petition properly presented by citizens within the jurisdiction, when no objection to the jurisdiction on other grounds exists.

2. SAME—EFFECT OF STATE LAWS.
   A state law exempting a receiver appointed by a court of equity from garnishment applies to the state courts only, and has no extraterritorial force.

3. SAME.
   Independently of statute, a receiver is not subject to garnishment except by consent of the court appointing him.

4. GARNISHMENT—JURISDICTION.
   Garnishment is a form of attachment, and property cannot be made subject thereto unless it is within the jurisdiction of the court.

5. SAME—PERSONAL SERVICE.
   Attachment in the form of garnishment cannot be maintained in the United States courts without personal service on the principal defendant, or his voluntary appearance.

6. RECEIVERS OF FEDERAL COURTS—GARNISHMENT PROCEEDINGS.
   Garnishment proceedings are not suits against the receiver for "any act or transaction of his," within the meaning of judiciary act of March 3, 1887, as corrected by Act Aug. 13, 1888 (25 Stat. 433), allowing receivers of federal courts to be sued for such acts in carrying on the business connected with the property, without leave of the appointing court.

7. SITUS OF DEBT.
   For the purpose of jurisdiction, the situs of a debt or other chose in action follows the domicile of the creditor.

8. JURISDICTION OF FEDERAL COURTS—EFFECT OF STATE STATUTE.
   Rev. St. § 915, providing that in the United States courts plaintiff shall be entitled to remedies by attachment or otherwise against defendant's property similar to those allowed to the state courts by the state laws, does not confer on the United States courts jurisdiction of suits by foreign attachment, or jurisdiction over a nonresident not served with process, though state courts have such jurisdiction under state laws.

9. GARNISHMENT—JURISDICTION—NONRESIDENT PARTIES.
   Where both the garnishee and the principal debtor are nonresidents, and the debt is payable in the state of their residence, there is no property

within the state subject to attachment in garnishment proceedings in either the state or United States courts.

10. SAME—RAILROAD COMPANY AS GARNISHEE.

Such rule applies to garnishment of the wages due by a foreign railroad corporation to its employés, also residents of another state, under contract of employment made in such state, and is not affected by the fact that such corporation, without being incorporated in the state, extends its line therein, and is subject to suit by process on its local agents.

11. SAME—CLAIM FOR WAGES.

In the absence of contract to the contrary, a debt for wages due from one nonresident to another nonresident living in the same state is payable by legal implication in such state, and is not subject to garnishment in another state.

Action by the Central Trust Company of New York against the Chattanooga, Rome & Columbus Railroad Company, in which a receiver was appointed. Petition in intervention by Miller & Garmony to attach by garnishment proceedings the wages of certain employés of such receiver.

T. P. Chamlee, for interveners.

J. H. Barr, for receiver.

CLARK, District Judge. This case is now before the court on intervening petition by Miller & Garmony, creditors of certain employés of the receiver of defendant company, appointed in the cause, with power, among other things, to operate the railroad. The defendant company is a corporation organized under the laws of the state of Georgia, with its line of railway extending a short distance into the state of Tennessee, so as to reach the city of Chattanooga. The receiver was appointed in the United States circuit court at Atlanta, Ga., where the principal case is pending, and the same person was appointed under an ancillary bill filed in this court. The petition seeks to attach by garnishment the wages due said employés, the statutory ground for attachment being alleged, namely, nonresidence of all the defendants, except one, as to whom the case is dismissed. The receiver, as well as the employés, are citizens and residents of the state of Georgia, and interveners citizens and residents of the state of Tennessee. The laborers whose wages are sought to be reached are employed and paid in the state of Georgia. The receiver answered the petition, showing wages due the nonresidents, and the amount thereof. No personal service was had on the other nonresident defendants, and no substituted service has been resorted to, and none could be, in a case like this, as will hereafter more fully appear.

Under the statutory law of Georgia, receivers appointed by a court of equity are not subject to garnishment, and laborers' wages are wholly exempt from liability to garnishment. These are the undisputed facts, and the case therefore turns on questions of law. It is insisted that, as the receiver is exempt from suit in his own state, and must account to the court having jurisdiction of the principal case, a suit such as this should not be entertained by this court. I have no doubt, however, of the right and jurisdiction of this court to hear and adjudicate upon all claims of the kind here in issue, when properly presented by citizens within the jurisdiction, when no objection to jurisdiction on other grounds

exists. This court would so control all suits as not to interfere with the proper jurisdiction and proceeding in the principal case, nor with the proper discharge of his duties by the receiver under order of the court in that case. On suggestion, any difficulty of that kind would be promptly obviated. And the statutory exemption from garnishment by the receiver, I think, is applicable to the state courts only, aside from its want of extraterritorial force. Independently of statute, the receiver is not subject to garnishment, except by consent of the court appointing him. High, Rec. (3d Ed.) § 151, and cases. It is argued, however, that by the judiciary act of March 3, 1887, as corrected by the act of August 13, 1888 (25 Stat. 433),[1] receivers of a railway company, appointed by a court of the United States, may be garnished in a state court, and Irwin v. McKechnie (Minn.) 59 N. W. 987, is cited as sustaining this position, and the supreme court of Minnesota does so hold. The garnishment suit here, however, being in the court appointing the receiver, and not in a state court, the bearing of that case on the question is not really very material, and the act of congress has been construed otherwise, and this question otherwise settled for this circuit. In a case before both circuit judges for this circuit and District Judge Barr, it was, upon full consideration, held that a garnishment proceeding was not within the terms of the act of congress (Central Trust Co. of New York v. East Tennessee, V. & G. Ry. Co., 59 Fed. 523), and this case was approved on the same point in Comer v. Felton, 10 C. C. A. 28, 61 Fed. 731, by the circuit court of appeals. There are jurisdictional objections, however, of serious import, and these are now to be examined, and in this inquiry into jurisdiction the court is not limited by the formal issues or argument.

The garnishee, as well as the principal debtors, being nonresidents, and the debts payable in another state, the question arises, has the court jurisdiction (there being no personal service) by seizure of property of the nonresident? In considering this question, it is to be constantly borne in mind that garnishment is a form of attachment. As was said by Maxwell, C. J., in Insurance Co. v. Hettler, 37 Neb. 849, 56 N. W. 711:

"Garnishment is an attachment by means of which money or property of a debtor in the hands of third parties, which cannot be levied upon, may be subjected to the payment of the creditor's claim. To subject the property to attachment it must be within the jurisdiction of the court; otherwise it would be powerless to condemn it, order a sale, and apply the proceeds to the payment of the judgment in favor of the creditor."

This is clearly the nature of garnishment on attachment in this state. Mill. & V. Code, §§ 4219, 4222; Caruth. Hist. Lawsuit, § 86. And in regard to an attachment, and in a case involving the attachment law of this state, the supreme court of the United States, in Cooper v. Reynolds, 10 Wall. 318, said:

"Its essential purpose or nature is to establish, by the judgment of the court, a demand or claim against the defendant, and to subject his property lying within the territorial jurisdiction of the court to the payment of that demand."

---

[1] The act provides that a receiver of a federal court may be sued for "acts or transactions of his" in carrying on the business in connection with the property, without leave of the appointing court.

And in the absence of personal service on the defendant within the jurisdiction the court said:

"Second. The court, in such a suit, cannot proceed, unless the officer finds some property of defendant on which to levy the writ of attachment. A return that none can be found is the end of the case, and deprives the court of further jurisdiction, though the publication may have been duly made, and proven in court. Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely in rem. Without this, the court can proceed no further; with it, the court can proceed to subject that property to the demand of plaintiff. If the writ of attachment is the lawful writ of the court, issued in proper form, under the seal of the court, and if it is by the proper officer levied upon property liable to the attachment, when such writ is returned into court, the power of the court over the res is established."

And in the subsequent case of Pennoyer v. Neff, 95 U. S. 723, the court, through Mr. Justice Field, announced the rule as follows:

"It is in virtue of the state's jurisdiction over the property of the nonresident situated within its limits that its tribunals can inquire into that nonresident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the nonresident have no property in the state, there is nothing upon which the tribunals can adjudicate. These views are not new. They have been frequently expressed, with more or less distinctness, in opinions of eminent judges, and have been carried into adjudications in numerous cases."

This doctrine is now firmly established. Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586; Arndt v. Grigg, 134 U. S. 316, 10 Sup. Ct. 557; Grover v. Machine Co., 137 U. S. 287, 11 Sup. Ct. 92; Wilson v. Seligman, 144 U. S. 44, 12 Sup. Ct. 541; Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559; Fitzsimmons v. Johnson, 90 Tenn. 416, 17 S. W. 100.

This result of the adjudged cases is to be recognized in considering the jurisdiction and validity of proceedings of this kind, and it is to be observed that the principles announced are general in application to all courts, state and federal, for, as will be seen further on, the courts of the United States, in the exercise of original jurisdiction, are more restricted in such cases, and the mere seizure of property of a nonresident is not sufficient to enable them to assume jurisdiction. It is not to be overlooked that attachment and garnishment suits against nonresidents alone are now being considered, and that the remedy is in this country a statutory one, analogous to the custom of foreign attachment, and is not a remedy belonging to the common law. It being essential that, in the absence of personal service within the jurisdiction, an actual seizure of, or levy on, property of the absent defendant within the jurisdiction be had, and that until this is done the jurisdiction is not established, and no substituted service authorized, the question of the situs of the property or res is one of paramount importance. This inquiry could present no difficulty in respect to real estate, and little or none in regard to tangible personal property having an actual situs. But, for the purpose of jurisdiction, the situs of a debt or other chose in action is a question upon which there is a diversity of judicial opinion. There is, of course, no actual visible, and only a legal or constructive, situs. Does the debt follow the creditor and his

domicile or the debtor and his domicile? The legal title and right are clearly in the creditor, and, by analogy to the principle that constructive possession is with the rightful owner, we should expect that the chose in action, particularly a debt, follows the person of the creditor. And such is the established rule. Tappan v. Bank, 19 Wall. 490; Kirtland v. Hotchkiss, 100 U. S. 491; State Tax on Foreign-Held Bonds, 15 Wall. 300; Cannon v. Apperson, 14 Lea, 555; Mayor of Gallatin v. Alexander, 10 Lea, 475; Douglass v. Insurance Co., 138 N. Y. 209, 33 N. E. 938; Insurance Co. v. Hettler, 37 Neb. 849, 56 N. W. 711; Railroad Co. v. Dooley, 78 Ala. 524; Railroad Co. v. Smith (Miss.) 12 South. 461; Railroad Co. v. Chumley, 92 Ala. 317, 9 South. 286; Railroad Co. v. Maggard (Colo. App.) 39 Pac. 985; Railway Co. v. Sharitt (Kan. Sup.) 23 Pac. 430, 19 Am. St. Rep. 145, and note. In State Tax on Foreign-Held Bonds, supra, the question depended upon the situs of debts due from a corporation of Pennsylvania, in the form of bonds, secured by mortgage upon property situated in that state, to nonresidents. The argument was that the situs was with the debtor corporation. But the court (page 319) said:

"Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense. They are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression, could add anything to its obvious truth, which is recognized upon its simple statement."

The decision of the supreme court of Pennsylvania was rested in part upon the view that, the bonds being secured by mortgage on property within the state, fixed their situs there, and the court (page 323) replied to this suggestion as follows:

"Such being the character of a mortgage in Pennsylvania, it cannot be said, as was justly observed by counsel, that the nonresident holder and owner of a bond secured by a mortgage in that state owns any real estate there. A mortgage being there a mere chose in action, it only confers upon the holder, or the party for whose benefit the mortgage is given, a right to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand. This right has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the state when held by a resident therein, but when held by a nonresident it is as much beyond the jurisdiction of the state as the person of the owner."

In Railroad Co. v. Dooley, already referred to, the garnishee was a corporation organized under the laws of Kentucky, and its employé was a citizen of the same state, employed and paid there. The company operated a line of railroad through Alabama, and had an office and agent at Mobile, though this fact and the character of the agency and agent's duties did not distinctly appear in the record. Jane Dooley, a resident of the state of Alabama, brought suit by attachment in the court of Alabama on a debt due from the

nonresident employé, and had garnishment writ served on the company's local agent, who answered for the company, showing an indebtedness for wages. Judgment of the city court against the garnishee was reversed. Chief Justice Stone expressed the opinion of the supreme court in the following language:

"Garnishment, like attachment, is a species of proceeding in rem. It acquires jurisdiction of the person pro hac vice, by seizing his property, goods, or choses in action. If it cannot acquire jurisdiction or control of the res, it needs must fail to acquire, through such res, jurisdiction of the person; for jurisdiction of the person is acquired only through the res, or thing. The debt in this case was contracted in Kentucky, the labor performed in Kentucky, for a corporation and by a laborer each resident in the state of Kentucky. The situs of a debt, in the absence of stipulation to the contrary, is the domicile of the creditor. A court in Alabama cannot obtain legal control of the res, or make any binding disposition of it; for process of attachment, under our statute, cannot change rights of property situated without the state. Hence, if it had been shown that the Louisville & Nashville Railroad Company was doing business in the state of Alabama, by operating a railroad or railroads within its borders, this could not help the plaintiff in this suit."

In Douglass v. Insurance Co., 138 N. Y. 209, 33 N. E. 938, the facts were that the insurance company, a corporation formed under the laws of the state of New York, was indebted to Douglass, a citizen of New York state, the insured, on account of a loss. The insurance company had an agent in Massachusetts, appointed under the laws of that state, upon whom process might be served, and was engaged in carrying on business in that state. Alley and other creditors of Douglass brought suit in Massachusetts jointly against the insurance company and Douglass, and the attachment or trustee process was served on the local agent and was levied on the debt. This was set up as a defense to the suit in New York on the policy by the insured, and the question was whether the Massachusetts court (that suit having been first instituted) had jurisdiction, and it was held that it had not. The court, speaking by Andrews, C. J., said:

"But attachment suits partake of the nature of suits in rem, and are distinctly such when they proceed without jurisdiction having been acquired of the person of the debtor in the attachment. Real and personal property may be subjected to seizure and sale for the payment of debts of the owner, according to the laws of the state or sovereignty where the property is, having regard to the fundamental condition that due process of law shall precede the appropriation."

And further (page 219, 138 N. Y., and page 940, 33 N. E.):

"But, we repeat, no court can acquire jurisdiction in attachment proceedings unless the res is either actually or constructively within the jurisdiction, and we are of the opinion that the attempt to execute an attachment in Massachusetts upon the debts owing to the plaintiff by the insurance company by serving upon the agent of the corporation there, and without having acquired jurisdiction of the plaintiff, must fail, for the reason that the debtor, the insurance company, was in no just or legal sense a resident of Massachusetts, and had no domicile there, and was not the agent of the plaintiff, and that in contemplation of law the company and the debt were at the time of the issuing of the attachment in the state of New York, and not in the state of Massachusetts. This court has had occasion heretofore to consider the effect of the act of a foreign corporation constituting an agent in another state, upon whom proceedings may be served, done in compliance with the laws of such state in pursuance of a condition imposed, and to enable the corporation to do business in such state. It has been held that by such act the corporation does not change its domicile of origin, or its residence."

And the supreme court of Mississippi, on facts similar to those in the Alabama case, reached the same conclusion as the supreme court of that state.   There is, as stated, a want of harmony in the decisions of the state courts of last resort.   But the supreme court of Mississippi, in the case named, referred to this as follows:

"There is some real conflict, and much confusion, not reaching the proportion of actual conflict, in the decisions on this subject.  Much of the confusion and some of the conflict has arisen out of a misapprehension of the real nature of the question.  With a clear misapprehension of the character of the controversy, several of the courts of last resort in the United States have misled themselves and misled others inveighing against supposed attempts to give extraterritorial effect to exemption laws.  The suggestion that this is the question involved is wide of the mark.  It is really this question:  Shall the state give its exemption laws interterritorial force in cases like the one at bar?  Shall railroad corporations doing business and resident in this state be regarded and treated in this and like cases just as natural persons?  The natural person resident in this state is not garnishable in a foreign jurisdiction for a debt due and payable here.  This is declared, and advisedly, to be settled law, in Bush v. Nance, 61 Miss. 237.  The appellant is a resident of this state, and the fact that it may also be a corporation and resident in other states may not operate to abrogate our exemption laws, founded in beneficent public policy, in so far as railroad corporations may be affected by them.  Furthermore, it is demonstrably certain that the situs of the debt sued for in this action is in Mississippi.  The creditor and debtor are both resident here.  The contract creating the debt was made here.  By its terms, payment is to be made here.  The garnishee in the foreign attachment proceeding is resident here.  Can it be seriously contended that the courts of this state have not exclusive jurisdiction of the debt, and that the courts of other states are without jurisdiction, and that the sum disclosed by the garnishee in a foreign attachment, as due in the state of his residence and the residence of his creditor, is not liable to condemnation in such proceedings?  In this case the debt is not within the jurisdiction of the foreign court, but here, at the residence of the creditor, and the place of payment under the control of its creation."  Railroad Co. v. Smith (Miss.) 12 South. 461.

The opinion of the court of appeals of Colorado in the case cited is an able and critical discussion of the subject, reviewing the cases. It is there pointed out by Judge Reed that the decision is in accord with those of the highest courts of the states of Massachusetts, Maine, New Hampshire, New York, Connecticut, Nebraska, Kansas, Michigan, Illinois, Alabama, Mississippi.  It is to be remembered that this question of jurisdiction, and for that purpose the situs of the res, is vital and fundamental.  And, where a strictly jurisdictional fact is wanting, it cannot be supplied by mere assertion or assumption.  The fact must legally and rightfully exist.  Or, as the court declared in Everett v. Walker (Colo. App.) 36 Pac. 616, in an able discussion of this question:

"It is as impossible by judicial construction as by legislative enactment to declare that property out of the state, having a domicile with the creditor or the debtor, is within the limits of the sovereignty for the purposes of a levy. Upon either consideration the judgment is right.  The affidavit did not justify the substituted service, and the writ did not impound the debt which the insurance company owed to Mrs. Walker."

The essential truth of the proposition must be considered.   For example, if a debt is property belonging to and with the creditor only, it cannot be made property in the possession of the debtor by misuse of terms, or by declaring it to be so.   Assuming that substantial facts and their effect are changed by misuse of terms or by mere declaration, is a not uncommon error in argument, and was

referred to in Brown v. Maryland, 12 Wheat. 444, Chief Justice Marshall saying:

"It is impossible to conceal from ourselves that this is varying the form without varying the substance."

And again, in Pollock v. Trust Co., 157 U. S. 583, 15 Sup. Ct. 673, Chief Justice Fuller observing:

"If, by calling a tax indirect when it is essentially direct, the rule of protection could be frittered away, one of the great landmarks defining the boundary between the nation and the states of which it is composed would have disappeared, and with it one of the bulwarks of private rights and private property."

And in this class of cases there is nothing to justify a strained interpretation to sustain jurisdiction. Garnishment suits, oftener than otherwise, affect wages exempt by the laws of the nonresident's state, and the success of the suit carries privation into the homes of the helpless. These exemption laws are enacted from the highest motives of humanity, and should not be defeated by unwarranted assumption of power. In view of this injustice some courts give full effect to the exemption laws of other states, as was done in Mason v. Beebee, 44 Fed. 556, and Railroad Co. v. Dougan, 142 Ill. 248, 31 N. E. 594; and in a note to Railroad Co. v. Smith (Miss.) 19 L. R. A. 577, 12 South. 461, cases on both sides of this question will be found collected.

Coming back now to the question, it has been seen that in the case under consideration and in the leading cases cited the garnishee and principal debtor were both nonresidents, and the place of employment and payment were in another state. It is stated in some of the cases that by statute as well as by contract the situs of the debt may be separated from the person of the creditor, and fixed at the domicile of the debtor or elsewhere. This is recognized in Douglass v. Insurance Co. in regard to a statute, and in respect to a contract in the case of Railroad Co. v. Maggard, the court saying:

"As between the plaintiff and defendant, the debt beyond question followed the domicile of the plaintiff. That was its situs. But the indebtedness of the garnishee to the defendant did not follow the plaintiff. Its situs was by contract fixed where the services were performed, and the payment to be made; and, if such claim or indebtedness is property, in contemplation of the statute, the situs of such property was in Kansas, and not in Colorado. Care must be taken not to confound the indebtedness due from the defendant to the plaintiff with that due the defendant from the garnishee. They have no relation to each other whatever. Each has its proper situs, regulated by law or contract or both. The courts of the state could not abrogate the contract of the garnishee with the defendant, and compel a different performance."

The plaintiffs refer to the cases of Railroad Co. v. Barnhill, 91 Tenn. 395, 19 S. W. 21, and Holland v. Railroad Co., 16 Lea, 414, as sustaining their contention. Both cases were decided upon substantially the same facts, but the question was discussed at length only in the Barnhill Case. The eminent judge delivering the opinion states the case as follows:

"The facts upon which the defense is made are as follows: That the Mobile & Ohio Railroad Company was chartered originally by the state of Alabama, then by the state of Mississippi, and then by the state of Tennessee; that the indebtedness of the company 'to Joyner is for labor performed wholly within

the state of Mississippi,' and under contract made in that state, and that he is a citizen of that state. Barnhill is a resident of Tennessee; and the garnishment process, which is in due form, was regularly served on the station agent of the railroad company at Ramer, in McNairy county, this state."

These cases are distinguishable from the one under consideration in the fact that the garnishee corporation had also been created a corporation of the state of Tennessee, and was, therefore, as the court thought, a resident and citizen of Tennessee, and not, in the court's view, a nonresident; and it would seem that the decision in both cases was distinctly rested upon this fact. In the case at bar there is no question that the garnishee is a nonresident. To sustain jurisdiction, it would seem the court in the Barnhill Case necessarily held that the situs of the debt was with the garnishee debtor, and not the creditor; and such view has been taken by other courts of high authority, and the decision in the Barnhill Case by a court of deserved distinction furnishes to that line of cases an authority of great weight. It is believed that the decision as to the situs of the debt is against the weight of authority, especially recent and well-considered cases; but it is not necessary to extend the inquiry on that point, for in a conflict of opinion in state courts I would decidedly incline to an agreement with the court of highest authority in the state. It is believed, however, that the opinion in the case is not in harmony with the ruling in the courts of the United States in respect to the point on which the decision was distinctly based, as well as the result. I think the question will possibly admit of further examination. In Railroad Co. v. Barnhill, importance is apparently attached to the fact that the principal debtor might have come to Tennessee and sued the company for his wages in the courts of Tennessee. But the action on any debt is transitory, and suit may be maintained in any jurisdiction where process can be served on the debtor. This is a question quite apart from the situs of the debt, where seizure of property takes the place of regular process as the basis of jurisdiction. In cases like this the question is not where the plaintiff may sue, but where the defendant's property is for the purpose of levy in the absence of personal process served. And again, could the servant have sued the Tennessee corporation? The court in this case, as in Holland v. Railroad Co., refers to decisions of the supreme court of the United States to sustain the position that, while the railroad company was originally created under the laws of Alabama, it had also been created a corporation and citizen of the states of Tennessee and Mississippi; and Memphis & C. R. Co. v. Alabama. 107 U. S. 581, 2 Sup. Ct. 432, is cited as an authority. But does the court give full effect to this and similar decisions? It is to be borne in mind that the corporation in such cases remains a citizen of the state originally creating it, and becomes a new corporation of each state subsequently creating it, and that in each state it is a separate corporation of that state only, and a distinct legal entity and corporation from the corporation of the same or a different name in each other state. Mr. Justice Gray, delivering the opinion of the court in the case just referred to, used this language:

"The defendant, being a corporation of the state of Alabama, has no existence in this state as a legal entity or person, except under and by force of its

incorporation by this state; and, although also incorporated in the state of Tennessee, must, as to all its doings within the state of Alabama, be considered a citizen of Alabama, which cannot sue or be sued by another citizen of Alabama in the courts of the United States. Ohio & Mississippi R. Co. v. Wheeler, 1 Black, 286; Railway Co. v. Whitton, 13 Wall. 270, 283."

And this proposition is clearly brought out and applied in Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S. 356, 10 Sup. Ct. 1004, and by the circuit court of appeals in the recent case of Railroad Co. v. Roberson, 9 C. C. A. 646, 61 Fed. 592. And in the earlier case of Railroad Co. v. Vance, 96 U. S. 450, Mr. Justice Harlan, stating the same proposition, said:

"The Indianapolis & St. Louis Railroad Company, as lessee of the St. Louis, Alton & Terre Haute Railroad Company, was thus created, by apt words, a corporation in Illinois. The fact that it bears the same name as that given to the company incorporated by Indiana cannot change the fact that it is a distinct corporation, having a separate existence, derived from the legislation of another state."

. The Nashville, Chattanooga & St. Louis Railway, a Tennessee corporation, became lessee of the Western & Atlantic Railroad, a line of railway owned by the state of Georgia, and the lessee corporation was by statute of that state made a corporation of Georgia also, under the name of the Western & Atlantic Railroad Company. The supreme court of Georgia held that the corporation in Georgia was a new and distinct corporation, and that for a tort committed in the operation of the railroad that corporation alone was liable, and suit could not be maintained against the Tennessee corporation (Railway Co. v. Edwards, 16 S. E. 347); and this decision was followed in Railroad Co. v. Roberson. The corporation, then, in Mississippi was distinct from that of Tennessee, as much so for jurisdictional purposes as if it never had been created a corporation in Tennessee; and as to all its acts and doings in Mississippi, and as to a transaction with an employé in which service was rendered wholly within that state, and the wages due there, it was a foreign corporation, and is to be so treated; and Joyner had no contract with the Tennessee corporation and no right of action against it. And the distinct and separate character of these corporations in the different states is not lost or changed by the fact that they are under the same management. In Nashua & L. R. Corp. v. Boston & L. R. Corp., the court (page 373) says:

"Identity of name, powers, and purposes does not create an identity of origin or existence, any more than any other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute, and to the corporation created by it, there can be but one legislative paternity."

And (page 375):

"There are many decisions, both of the federal and state courts, which establish the rule that, however closely two corporations of different states may unite their interests, and though even the stockholders of one may become the stockholders of the other, and their business be conducted by the same directors, the separate identity of each as a corporation of the state by which it was created, and as a citizen of the state, is not thereby lost."

The case was, then, for all legal purposes, it would seem, exactly like the one at bar, both garnishee and principal debtor being nonresidents, and there was no property or res within the jurisdiction.

This must be so, or confusion and conflict would ensue; for if, on the facts in the Barnhill Case, the res was within the jurisdiction of the Tennessee court, and subject to seizure, it was equally so in Alabama, and, a fortiori, so in Mississippi. It certainly cannot be maintained that the situs of this debt was at the same time in all of these states, and, as the supreme court of Colorado in the recent case cited stated:

"If such fund could be reached by service of garnishment papers in this state, it must be obvious that the plaintiff could have attached by garnishee proceedings at any station on its line where it had an agent, upon the theory that the claim was ambulatory, and had a situs in the office of each agent, regardless of location."

And so in Alabama. I have not thought it necessary to refer to the contract in the Barnhill Case, as fixing the situs in Mississippi, nor to extend the inquiry at all in that direction.

The case in hand, being instituted in this court, involves the question how far the remedy by attachment is available in the courts of the United States in the exercise of original jurisdiction. It avoids possible confusion to keep in mind the distinction between cases wherein the validity of attachment proceedings in state courts is considered, as in Cooper v. Reynolds and Pennoyer v. Neff, and those in which the question of the extent to which the courts of the United States can entertain jurisdiction of an attachment suit is discussed, as in Toland v. Sprague, 12 Pet. 300, and Ex parte Railroad Co., 103 U. S. 794. No legislation of congress has provided or attempted to provide an attachment remedy in the federal courts like those existing by statute in the states, except to the extent noticed further on. And the provision, "But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court," has been continued without interruption in all the judiciary acts from that of 1789 to the corrected act of 1888. Process served on the defendant within the district, or voluntary appearance, is necessary, and the process of foreign attachment cannot give jurisdiction without such service or appearance. Toland v. Sprague, 12 Pet. 300; Pollard v. Dwight, 4 Cranch, 424; Chaffee v. Hayward, 20 How. 208. The decision in Toland v. Sprague was not questioned as being the settled rule until the act of 1872, re-enacted in the Revised Statutes (section 915), which is as follows:

"Sec. 915. In common-law cases in the circuit and district courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the state in which such court is held for the courts thereof; and such circuit or district courts may, from time to time, by general rules, adopt such state laws as may be in force in the states where they are held in relation to attachments and other process: provided, that similar preliminary affidavits or proofs, and similar security, as required by such state laws, shall be first furnished by the party seeking such attachment or other remedy."

It has been held, however, that this act does not confer upon United States courts jurisdiction to entertain suits by the process of foreign attachment, and that the statute and any rule adopting the state laws do not give a circuit or district court power thus to

·acquire jurisdiction over a person not a resident of the district, nor served with process therein. Ex parte Railroad, 103 U. S. 794; Chittenden v. Darden, Fed. Cas. No. 2,688; Anderson v. Shaffer, 10 Fed. 266; Boston Electric Co. v. Electric Gaslighting Co., 23 Fed. 838; Harland v. United Lines Tel. Co., 40 Fed. 308; Treadwell v. Seymour, 41 Fed. 581. The restriction has been held not to apply to a suit removed into a circuit court of the United States from the state court. Bank v. Pagenstecher, 44 Fed. 706. This limited power of the courts of the United States alone might have been examined, and the case under consideration adjudged, under that aspect of the question. But the facts to be stated justified, it was thought, a somewhat extended examination of the subject, and a review, of the leading cases. The United States circuit court for this district is held in the city of Chattanooga, situated near the line of Tennessee and the corner lines of Georgia and Alabama, and questions of the character here involved are presented often. It is well known personally to older members of the bar of this city that prior to 1870, when a citizen of the state of Georgia found the exemption laws of his own state an obstruction to execution against his poor neighbor, he only waited patiently and vigilantly until the neighbor came to this city to market produce or barter transported by wagon, and then appeared promptly on the ground with an attachment issued from the state courts based on nonresidence. Seizure and sacrifice of property, with expense and wrong of the most repugnant form, followed. The general assembly interfered, and the act passed is found in section 4193 of the Code (Mill. & V.) as follows:

"4193. When the debtor and creditor are both nonresidents of this state, and residents of the same state, the creditor shall not have attachment against the property of his debtor unless he swear that the property of the debtor has been fraudulently removed to this state to evade the process of law in the state of their domicile or residence."

This statute to a large extent suppressed the existing abuse. Another similar perversion of legal process still exists in the local justice of the peace courts, in violation of the intent and purpose of the act. Where a citizen of Georgia has a debt against another citizen of the same state in the employment of a corporation operating a railway into this state, and desires to evade the exemption laws and the above statute, the debt is transferred pro forma to a friend or collection agent in this city, and garnishment proceeding in the name of the latter is instituted, with notice to the foreign corporation's local agent. The amount is small, and the expense of coming to this state to defend is considerable, and out of all proportion to the debt involved. The laborer is practically powerless. There is here an entire want of everything real and substantial to support jurisdiction. The case goes practically without defense, and sheer confiscation and petty oppression result.

In the Nebraska case, referring to the fact that an unwarranted exercise of jurisdiction in these cases may result in compelling the garnishee to pay the debt twice, Judge Maxwell characterized the result as "abhorrent to our sense of justice," and these terms fitly de-

scribe the abuse just mentioned. And on the facts of the Barnhill Case, while the supreme court of Alabama, following its own decisions, would have denied jurisdiction, the supreme court of Mississippi, consistently with its own rulings, would have sustained its own jurisdiction, and the proceedings in Tennessee, being, in that court's opinion, without jurisdiction, would have been no bar to a recovery by Joyner, and the garnishee could be thus compelled to pay a second time; and in an affair of magnitude this is probably what would happen. In Joyner's case it is not difficult to suppose that he would practically be put to an election between his rights and his position, and in such alternative, the amount being small, would give up the former. The courts holding the better opinion on the question, in dealing with these cases, recognize and give effect to the proposition that the principal parties to the litigation are the plaintiff on one side and the principal debtor on the other, and that the position of the garnishee is practically that of a mere trustee. In some of the cases sustaining jurisdiction, the discussion treats the garnishee as if sued in respect of a liability of the garnishee's own, while the real defendant to be seriously affected by the result is given a secondary position. In such cases process statutes are cited which affect the mode of acquiring jurisdiction of the foreign corporation in respect to a right asserted against it alone, and thus quite a strong case is made against the garnishee. As the case turns on the question of jurisdiction, I do not find it necessary to consider the point of giving effect in the Tennessee forum to the exemption laws of the state of Georgia, and the question is apparently settled in this state. Carson v. Railroad Co., 88 Tenn. 646, 13 S. W. 588.

The conclusions reached are:

1. That a suit by attachment in the ordinary or garnishment form cannot be maintained in the courts of the United States without personal service on the principal defendant or his voluntary appearance.

2. That, where both garnishee and the principal debtor are nonresidents of this state, and the debt, such as wages due, is payable in the state of their residence, there is no property within the state, and the courts of the state and the courts of the United States for such state are without jurisdiction to proceed by attachment, and a judgment based on such attachment is an absolute nullity. And this rule applies fully to the case of wages due by a corporation of another state to its employé, a resident of such other state, under contract of employment there made, and is not affected by the fact that a foreign railway corporation, without being incorporated in this state, extends its railroad into this state, and is subject to suit by process on its local agents.

3. That a debt in ordinary form, or in the form of wages due from one nonresident of the state to another nonresident of the same state, is payable as matter of law or by legal implication in such other state in the absence of a place fixed by the contract, and in such case there is no property in the state subject to levy or seizure. The petition is, for want of jurisdiction upon both grounds, dismissed, with costs.